ADDI FAN, Appellant, v. ANTHONY W. BUZZITTA, Respondent.

Second Department, June 18, 1973.

*Matthew J. Cronin* for appellant.

*Bower & Gardner* (*Benjamin H. Siff, Thomas R. Newman* and *Clifford Bartlett* of counsel), for respondent.

GULOTTA, J.   This appeal presents what appears to be a matter of first impression in this State.   We are asked to decide whether a pedestrian crossing a roadway at a " T " intersection, from the top of the " T " to its stem on the opposite side, is crossing at a crosswalk, even though the area is not so delineated by street markings, and therefore entitled to a charge to the jury with respect to his having the right of way over vehicles at the crossing.

This is the position in which the plaintiff found himself as a result of being hit by the defendant's automobile proceeding along the top of the " T ".   It is undisputed that there were no lines or markings on the road surface designating a crosswalk. He has appealed from a judgment which was entered upon a jury verdict in favor of the defendant.

The plaintiff requested that the trial court charge the jury that section 1151 of the Vehicle and Traffic Law, which pertains to a pedestrian's right of way in a crosswalk when traffic control signals are not in place or not operating, was applicable.   The court refused to so charge and held that subdivision (a) of section 1152 of the Vehicle and Traffic Law, which deals with the right of way of a pedestrian who is crossing a street at a point other than at a crosswalk, was controlling.

There is a significant difference between the two sections and the instruction which was given may very well have influenced the jury verdict for the defendant.   Simply put, section 1151 requires the *vehicle* to yield the right of way, whereas subdivision (a) of section 1152 requires the pedestrian to so do, thereby shifting the responsibility to the plaintiff *pedestrian*.   A determination that the plaintiff was, in fact, in a crosswalk at the time of the accident would entitle him to a new trial based upon the incorrect ruling of the trial court and the refusal to charge as requested.

Section 110 of the Vehicle and Traffic Law defines a crosswalk as follows:

   " § 110. Crosswalk.

   " (a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway between the curbs or, in the absence of curbs, between the edges of the traversable roadway.

" (b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface."

On the other hand, section 120 of the Vehicle and Traffic Law defines "intersection" as follows: "§ 120. Intersection. (a) The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

These are closely related concepts since crosswalks usually are found at intersections, although this is not always true. The statutory scheme recognizes this by allowing marked crosswalks to be set up at other places and in effect provides for automatic crosswalks at all intersections.

It is evident that there is a curious anomaly in these two sections of the statute. The " crosswalk " definition requires a connection between the lateral lines of the sidewalk on opposite sides of the highway and omits the idea of simply prolonging the lines across the intersection whether or not there is a sidewalk running in the same direction on the other side. In contrast, the definition of " intersection " provides for either a *prolongation or connection* of the lateral curb lines, thus including a " T " type " intersection " within its meaning, while the " crosswalk " phrasing excludes it.

We think this literal application of the exact wording of these sections to the situation presented by this case leads to an absurd result and could not have been intended by the Legislature. It is highly unlikely that a condition as commonplace as a " T " intersection, where there is as much need to protect pedestrians as at a cross-intersection, could have been purposely excluded from the statutory scheme. Instead, it appears to have been inadvertently overlooked. A verbatim application of these sections of the statute would place a person who is careful to cross at the intersection within the prolongation of the sidewalk lines in the same class as the person who crosses in the middle of a block or diagonally across. To make the safety of the users of a highway dependent upon whether there is a continuation of a sidewalk on the opposite side of the street is unreasonable and inconsistent with the undoubted purpose of the statute to afford protection to pedestrians crossing at an intersection, be it the usual transverse intersection or a " T " intersection.

In construing statutory provisions, the intent of the statute and the objectives sought to be accomplished must be kept in mind. The legislation must be given a reasonable interpretation so as to accomplish its purpose. When the literal language of the statute does not express the manifest intent and purpose it need not be adhered to. Rather, to effect the intention of the Legislature, the words of a single provision may be enlarged or restrained in their meaning and operation; and language general in expression may be subjected to exceptions through implication (*Abood* v. *Hospital Ambulance Serv.*, 30 N Y 2d 295). In the case before us, literal interpretation would defeat the intended purpose, i.e., to afford protection to pedestrians crossing at *all* intersections.

Although we have found no case in point in the State of New York, we are not unaware that other jurisdictions which have dealt with almost identical language have come to a different conclusion (see *Langlois* v. *Rees,* 10 Utah 2d 272; *Griffin* v. *Odum,* 108 Ga. App. 572). Each of these States, as well as New York, in enacting its respective crosswalk statute, has adopted the wording recommended by the National Committee on Uniform Traffic Laws and Ordinances (Uniform Vehicle Code [1956 rev.], § 1–111, subd. [a]).

However, we feel that the logic of the situation and the reasonable interpretation of the statute involved dictate that we take a contrary view. Notwithstanding the afore-mentioned cases from other jurisdictions, we cannot disregard the overriding purpose of this statute, even though the particular situation which has arisen may not have been foreseen.

We therefore conclude that at a " T " intersection that portion of the roadway included within the prolongation of the lateral lines of the sidewalk running from the stem to the top of the " T " on the opposite side of the highway, between curbs, is a crosswalk within the meaning of subdivision (a) of section 110 of the Vehicle and Traffic Law.

The judgment should be reversed, on the law, and a new trial granted, with costs to abide the event. The appeal did not present questions of fact.

MUNDER, Acting P. J., LATHAM, CHRIST and BENJAMIN, JJ., concur.

Judgment of the Supreme Court, Kings County, entered October 17, 1972, reversed, on the law, and a new trial granted, with costs to abide the event. The appeal did not present questions of fact.